684 A.2d 1088

**Michel J. SHIRLEY, By His Mother, Sharon SHIRLEY, Natural Guardian, Appellant,**

v.

**Mehdi B. JAVAN, Appellee.**

Superior Court of Pennsylvania.

Argued May 22, 1996.

Filed Nov. 12, 1996.

See also 541 Pa. 641, 663 A.2d 693.

Annaliese P. Masser, Greensburg, for appellant.

Irving M. Green, New Kensington, for appellee.

Before CIRILLO, President Judge Emeritus, and DEL SOLE and OLSZEWSKI, JJ.

CIRILLO, President Judge Emeritus:

Appellant Michel J. Shirley, by his natural mother, Sharon Shirley, appeals from an order of the Court of Common Pleas granting the motion for judgment on the pleadings filed by Mehdi B. Javan, M.D. We reverse.

On April 24, 1979, Sharon Shirley gave birth to a son, Michel. In 1980, Shirley filed a complaint for support against the putative father, Mehdi B. Javan, M.D. Dr. Javan denied paternity. The court ordered blood tests. Blood testing revealed a 99.98% possibility of paternity, and Dr. Javan demanded a jury trial. One day into the trial, the parties entered into a settlement agreement. The court approved the agreement and entered a verdict in accordance with the terms of the agreement. The settlement agreement provides in relevant part:

1. That [Javan] shall pay the sum of Twenty Thousand Dollars to [Shirley] to be held in trust for the maintenance, care and support of the child....

\* \* \* \* \* \*

6. [Shirley] hereby agrees to release and indemnify and forever save harmless [Javan] from any further ... claims in regard to the paternity or support of the child.

7. The parties hereto agree that a verdict shall be entered in the above lawsuit in favor of [Javan] and against [Shirley].....

Thereafter, on August 30, 1993, Shirley filed another complaint for support against Dr. Javan. The court held a hearing, at which time the parties stipulated to certain facts, including the fact that since August of 1993 Shirley and Michel had been receiving Aid to Families with Dependent Children (AFDC) and that both continued to receive this public assistance.

On October 27, 1993, the trial court entered an order discontinuing Shirley's complaint based on the outcome of the 1980 action. Shirley filed a petition to reopen the discontinued complaint. After a hearing, the trial court denied Shirley's petition. The court reasoned that a verdict entered in favor of Dr. Javan in the paternity action conclusively determined that issue in favor of Dr. Javan. On appeal to this court, that decision was affirmed. *See Shirley v. Javan,* 442 Pa.Super. 649, 659 A.2d 10 (1995). *See generally Elfman & Sons v. Clime,* 355 Pa.Super. 394, 397, 513 A.2d 488, 489 (1986) ("a judgment *entered by consent or agreement* will bind the parties with the same force and effect as if it had been entered after a full hearing on the merits.") (emphasis in original); *see also Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n,* 468 Pa. 85, 91, 360 A.2d 191, 194 (1976). Shirley petitioned for review in the Pennsylvania Supreme Court. This petition was denied. *Shirley v. Javan,* 541 Pa. 641, 663 A.2d 693 (1995).

Thereafter, on November 13, 1995, a third complaint for support was filed against Javan, this time in Michel's name, by his mother as his natural guardian. The complaint alleged that "Plaintiff is receiving public assistance with his mother who together receive $316.00 monthly." Dr. Javan denied paternity. Blood tests were ordered and Javan demanded a

jury trial. Blood tests yielded a 99.88% probability of paternity.

Dr. Javan filed an answer and new matter, alleging that Michel's claim was barred under the doctrine of res judicata and/or collateral estoppel. Michel filed an answer to new matter, contending that the defenses of res judicata and/or collateral estoppel were waived because Dr. Javan had denied paternity, requested blood tests, and demanded a jury trial.

Dr. Javan filed a motion for judgment on the pleadings. This motion was granted and Michel filed this appeal. Michel raises one claim for our review:

Is a child in privity with his mother so that a subsequent paternity action by the child is barred by an earlier directed verdict against the child's mother? [1]

In reviewing a trial court's decision granting a motion for judgment on the pleadings, the appellate court's scope of review is plenary; the appellate court will apply the same standard employed by the trial court, confining its consideration to the pleadings and relevant documents. *Jones v. Travelers Insurance Co.*, 356 Pa.Super. 213, 514 A.2d 576, 578 (1986); *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878, 880 (1986). The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. The court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise. *Jones, supra; Vogel, supra.*

In *Shoemaker v. Coulson*, 335 Pa.Super. 626, 485 A.2d 70 (1984), this court was presented with the issue of whether the entry and satisfaction of a judgment in lieu of child support precludes future support actions on behalf of the child. In *Shoemaker*, like in the instant case, mother institut-

---

**1.** The appellee's brief never addresses the question of privity, and presents its argument on finality with the assumption that the parties are privies.

ed a support action and alleged paternity against putative father, Barry Coulson. The action culminated in a negotiated directed verdict and lump sum settlement. Thereafter, the mother applied for public assistance at the Cumberland County Board of Assistance and filed a second support action against Coulson. The trial court held that the mother was not estopped from maintaining the support action. Coulson appealed.

On appeal, this court acknowledged two competing concerns: precluding a parent from contracting away the right of his or her child to seek adequate support from the other parent, *id.* at 629–30, 485 A.2d at 72 (citing *Oman v. Oman,* 333 Pa.Super. 356, 482 A.2d 606, 608 (1984)), and enforcing settlement agreements entered into between parents for the support of their children. *Shoemaker,* 335 Pa.Super. at 629–30, 485 A.2d at 72. This court, affirming the trial court's order, emphasized that the overriding concern *must* be the welfare of the child. *Id.*

> To that end, the court may always reconsider what an appropriate amount of support should be. **The courts will also reconsider the terms of [a] support agreement when the maintenance of the child becomes a burden upon the public....** Such is the case before us. Appellee has applied for public assistance in the support of her child. We fail to see why the Commonwealth should bear the burden of supporting the child when her father may be so able. A one-time payment toward her support will not serve to relieve appellant of his parental obligation to the detriment of the public.

*Id.* (emphasis added). *See also Miesen v. Frank,* 361 Pa.Super. 204, 522 A.2d 85, 87 (1987) (it is well settled that a parent cannot contract away the rights of his or her child to seek adequate support from the other parent).

More recently, in *Diehl v. Mulhern,* 406 Pa.Super. 422, 594 A.2d 692 (1991), this court reiterated:

> The obligation of a parent to support his or her child is an unwavering one, and one parent will not be permitted to

contract away the right of his or her child to seek support from the other parent. *Oman v. Oman,* 333 Pa.Super. 356, 359, 482 A.2d 606, 608 (1984), *quoting Brown v. Hall,* 495 Pa. 635, 643 n. 11, 435 A.2d 859, 863 n. 11 (1981); *Mallinger v. Mallinger,* 197 Pa.Super. 34, 175 A.2d 890 (1961). In fact, we once observed that "agreements or disputes are almost irrelevant when balanced against the overwhelming concern of the law with the welfare of the children." *Commonwealth ex rel. McCartney v. McCartney,* 217 Pa.Super. 417, 420, 274 A.2d 206, 207 (1970).

*Diehl,* 406 Pa.Super. at 428, 594 A.2d at 695, *quoting Coulson,* 335 Pa.Super. at 629, 485 A.2d at 72.

This court is bound by *Shoemaker.* The facts and considerations in this case are identical to those in *Shoemaker.*[2] Michel's claim, therefore, is not barred.

Reversed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

I must dissent from the majority's determination that this case is controlled by *Commonwealth ex rel. Shoemaker v. Coulson,* 335 Pa.Super. 626, 485 A.2d 70 (1984). Sharon Shirley raised the applicability of this case in her previous appeal to this court. *Shirley v. Javan,* 442 Pa.Super. 649, 659 A.2d 10 (1995). We there determined that *Shoemaker* was not applicable and could not provide authority for allowing Shirley to reinstate the child support action.

In *Shoemaker,* the parties had negotiated a lump-sum settlement and agreed to a directed verdict. The issue of paternity was resolved in the mother's favor. This court permitted the mother to proceed with a subsequent action to

---

**2.** Michel argues that this court implicitly acknowledged, in its memorandum decision affirming the 1980 dismissal, that there was no privity between mother and son. This is incorrect; the Superior Court memorandum decision merely identified the fact that the issue was not before the court because *Michel* had not filed an independent action.

obtain additional support on the principle that a parent cannot contract away the child's right to support.

Paternity must be established before any right to support exists. In *Shoemaker,* paternity was established by the settlement and directed verdict so the only issue was whether requesting additional support was precluded by the payment of the lump sum. In the case presently before us, the original support action was also settled by a directed verdict and lump sum payment. However, the directed verdict was in favor of Javan. The entry of this verdict thus established that Javan is *not* Michel's father.

This difference is crucial. In *Shoemaker,* the directed verdict in favor of the mother was a finding of paternity. This established a duty to support and the only issue then was the amount of support. In this case the directed verdict in favor of Javan is a finding of no paternity. Because there is a finding of no paternity, there cannot be a duty to support. Those cases which hold that a parent cannot contract away the child's right to support are inapposite because the child has no right to support from someone who is not his father.

Shirley is not requesting a redetermination of the amount of support but is seeking to overturn the verdict of no paternity. The directed verdict entered by consent has the same force and effect as if it were a jury verdict entered after a full hearing. *Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n,* 468 Pa. 85, 360 A.2d 191 (1976). *Shoemaker* does not give the trial court the authority to disregard such a verdict and require Javan to be subjected to another trial on the same issue.

On the issue of whether Michel and his mother are in privity with one another, I agree with the trial court's analysis.

'Privity' for these purposes has been defined as 'such an identification in interest of one person with another as to represent the same legal rights; and the term "privy" when applied to a judgment or decree refers to one whose interest has been legally represented at the trial.' 50 C.J.S. *Judgments* § 788 (1947). Children, in particular, are bound by prior judgments against their parents when the children

'were properly represented in the litigation,' or when they were 'represented in the litigation by their parents or other persons.' *Id.,* § 804.

In the prior litigation, Michel was legally and properly represented by his mother, who sued under Pennsylvania Rule of Civil Procedure 1910.3(2). Rule 1910.3(2) permits an action for support to be brought *'on behalf of a minor child* by a person having custody of the minor, without appointment as guardian ad litem.' (Emphasis added.) As explained above, this was the only way to obtain child support for Michel. Accordingly, the rule *defines* mother and child as privies. When Ms. Shirley sued, she sued *on behalf of Michel,* to protect his interests, not hers.

Nowhere is this more clear than in the parties' agreement, in settlement of the initial action. The agreement states that the lump sum payment was 'to be held in trust for the maintenance, care and support of the child Michael [sic] Shirley.' The fact that the present action purportedly is brought in Michel's own name makes no difference; all of the actions have been brought and have proceeded on his behalf.

Trial court opinion at pp. 10–11.

I would affirm the order of the trial court dismissing this action.