J-S15003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.L.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| D.A.D. | |
| Appellant | No. 3280 EDA 2017 |

Appeal from the Order Entered September 7, 2017
In the Court of Common Pleas of Bucks County
Domestic Relations at No: 2017DR00829

BEFORE:  STABILE, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 26, 2018**

Appellant, D.A.D. ("Father"), appeals from an order directing him, *inter alia*, to pay $645.00 per month for current child support and $65.00 per month for arrears to Appellee, B.L.D. ("Mother").  We affirm.

Father and Mother were married for almost thirteen years before divorcing in 2016.  They share one child, P.D., who was born in 2008.  On July 13, 2016, Father and Mother entered into a "Stipulation for Agreed Order of Custody" ("Stipulation").  In relevant part, the Stipulation provided:

13.  The parties agree to send [P.D.] to Bryn Athyn Church School. If the parties do not jointly agree, then [P.D.] will attend public school.  In the event that [P.D.] does attend Bryn Athyn Church School, the annual cost will be equally shared, including tuition, books, miscellaneous fees and uniforms.

14.  The parties agree that Father will be responsible for providing health insurance for [P.D.] so long as it is available through his employment at little or no cost, as is currently the case.  In the

event that there is a change in this status, the parties agree to reevaluate payment for health insurance and available plans.

15. Costs, co-pays, non-covered expenses and the like related to medical, dental, optometric, ophthalmic, orthodontic, physical therapy, psychiatric care, psychological care and medical needs are to be equally shared by the parties. Each parent shall provide the other with the statement and receipts documenting payments made and shall do so on a monthly basis. The parties will then determine the total expended per month, what each party has expended per month and whether a party is owed a sum of money, based upon the equal sharing of out-of-pocket expenses as stated in this section. If a parent owes the other parent a sum of money to equal the 50% sharing of out-of-pocket medical and other expenses set forth herein, that check will be paid within five (5) days.

\* \* \*

17. **As the parties are sharing responsibility, in all respects, for raising their child, they agree that neither will pursue child support.** The parties agree to discuss major expenditures. Both parents are putting money into a separate account for [P.D.], which usage must be agreed to by the parties in order for joint signature checks to be issued for payment and/or reimbursement for expenditures. The parties further agree that it is in [P.D.]'s best interests that the parents work together in this regard.

Stipulation, ¶¶ 13-15, 17 (emphasis added). Mother did not receive any payment from Father upon the execution of the Stipulation.

On August 2, 2016, the Stipulation was entered as an order of court. On May 8, 2017, Father filed a petition seeking primary physical custody of P.D. on the ground that Mother's behavior was affecting P.D.'s mental stability. On May 22, 2017, Mother filed a complaint demanding that Father provide support for P.D. After a support conference on July 28, 2017, a hearing officer in the court's Domestic Relations Section entered an interim

order directing Father to pay $710.00 a month to the Pennsylvania State Collection and Disbursement Unit, including $645.00 per month for current support and $65.00 per month for arrears. On the same day, a hearing was set for September 7, 2017 to determine a final support order.

During a support hearing on September 7, 2017, Mother testified that she needed additional support because of financial issues that forced her and P.D. to move in with her mother. In response, Father argued that paragraph 17 of the Stipulation constituted Mother's permanent waiver of her right to seek child support. Father also contended that he complied with the other provisions of the Stipulation by fully paying P.D.'s school tuition, health insurance and karate lessons and half of the costs of P.D.'s summer camp and life insurance premiums.[1,2] Both parties presented evidence of their respective incomes. In 2016, Father earned $65,430.00, and Mother earned $38,600. N.T., 9/7/17, at 11, 35.

Following the hearing, the trial court ordered Father to pay $645.00 per month for current support and $65.00 per month for arrears and to provide

_____

[1] Father also argued that the hearing officer's calculation of Mother's net income for support purposes did not accurately reflect her earning potential. Father did not renew this argument in his appellate briefs.

[2] Although Mother acknowledged that the parties had created the separate bank account for P.D. contemplated in paragraph 17 of the Stipulation, Father did not identify the amount of money that he deposited into this account.

health insurance for P.D.[3] Father filed a timely appeal to this Court, and both

Father and the court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. A) Whether the Trial Court abused its discretion or committed an error of law when, at the hearing, it refused to review, consider, or apply applicable case law as to whether [Father's] and Mother's fair and binding agreement for the financial well-being of the parties' child which contained a clause precluding either parent from filing for child support from the other, where child's welfare is not prejudiced and the agreement is made without coercion, duress, fraud, and, is fair and reasonable?

B) Whether the Trial Court abused its discretion or committed an error of law when, at the hearing, it denied [Father] the opportunity to provide evidence and the Court refused to hear or consider evidence of a fair and binding agreement between [Father] and [Mother] for the financial well-being of the parties' child and where a clause of said agreement precluded either parent from filing for child support and where both parents were abiding by said agreement, which should have nullified, disallowed, or blocked [Mother's] Petition for Child Support?

C) Whether the Trial Court abused its discretion or committed an error of law when at the hearing, it refused to enforce [Father's] and [Mother's] agreement for shared financial costs for the well-being and welfare of the parties' child and which contained a clause precluding either parent from filing for child support and where said agreement did not waive either parent's financial responsibility to care for the child nor waive or bargain away the child's right to receive child support?

2. Whether the Trial Court abused its discretion or committed an error of law when, at the hearing, it ruled that [Father's] Petition to Modify custody nullified his ability to request that the current custody order and parts thereof, continue to be enforced especially when said parts thereof, included a fair and binding

_____

[3] The court also ordered Father to pay 70% of unreimbursed medical expenses for P.D. that exceed $250.00 annually and directed Mother to pay 30%. Father does not appeal this decision.

- 4 -

agreement between [Father] and [Mother] for both parties to continue to care and be responsible for the financial well-being of the parties' child and where said agreement contained a clause precluding either parent from filing for child support from the other and where [Father's] petition for custody modification was only for physical custody and did not affect the custody agreement's portion relevant to child support matters?

Father's Brief at 8-10.

Father's arguments all sound the same theme: the trial court abused its discretion by ordering Father to pay child support, since the Stipulation provided that "neither [parent] will pursue child support," and since Father complied with the rest of the Stipulation by paying P.D.'s entire school tuition, health insurance and karate lessons and half of her summer camp costs and life insurance premiums.

> The applicable standard of review with respect to support awards is abuse of discretion; the amount of the support awarded is largely within the sound discretion of the trial court. A finding that the court abused its discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality. Thus, this Court may reverse the trial court's determination only if the court's order cannot be sustained on any valid ground.

***Chapman-Rolle v. Rolle***, 893 A.2d 770, 773 (Pa. Super. 2006).

Trial courts award child support based on Child Support Guidelines promulgated by our Supreme Court. The purpose of the Guidelines is to ensure "that persons similarly situated shall be treated similarly." 23 Pa.C.S.A. § 4322(a). When examining a petition for child support, the trial court utilizes the Guidelines to determine the reasonable needs of the child and the ability

of the obligor to provide support. *Id.* "In determining the ... ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." *Id.* The trial court may modify a support order when the moving party proves that a material and substantial change of circumstances has occurred since the entry of the original or modified order. 23 Pa.C.S.A. § 3105; *McClain v. McClain*, 872 A.2d 856, 863 (Pa. Super. 2005).

The duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Hanrahan v. Bakker*, 151 A.3d 195, 202 (Pa. Super. 2016). Parents have a positive duty to provide care, control and subsistence for their children as well as a duty to love, protect and support the child. *Petition of Lutheran Children and Family Services of Eastern Pennsylvania*, 321 A.2d 618, 620 (Pa. 1974). Both parents bear an equal responsibility for supporting their children in accordance with their capacity and ability to pay. *Shindel v. Leedom*, 504 A.2d 353, 355 (Pa. Super. 1986). One parent cannot contract away the right of her child to seek adequate support from the other parent. *Miesen v. Frank*, 522 A.2d 85, 87 (Pa. Super. 1986). Neither can parents contract for one parent to indemnify the other parent for any support payments made by the other parent, for that "would undermine the [other parent's] legal duty to support

his children to the best of his ability." ***Id.***; ***see Sams v. Sams***, 808 A.2d 206, 213 (Pa. Super. 2002) (mother's agreement to accept reduction in support from father was invalid; mother had no power to bargain away her children's right to support by agreeing to reduction of father's support obligation, mother was in desperate need of funds and was left with no meaningful choice but agree to father's offer, and mother did not have immediate alternative remedy).

Relying on ***Roberts v. Furst***, 561 A.2d 802 (Pa. Super. 1989), Father argues that the Stipulation entitles him to limit P.D.'s support to the items specified in the Stipulation (private school tuition, health insurance, unreimbursed medical expenses) and items that Father, in his sole discretion, elects to pay. We disagree. In ***Roberts***, this Court upheld an agreement between three persons—the natural father and mother and the mother's new husband—releasing the father from further child support obligations in exchange for his payment of $9,000.00 to the mother and her new husband. ***Roberts*** is distinguishable from the present case in two respects. First, the mother and new husband in ***Roberts*** received a $9,000.00 payment from the husband, ***id.***, 561 A.2d at 802, and were financially capable of supporting the two children. ***Id.*** at 804. Here, in contrast, Mother did not receive any cash payment from Father. There is no evidence that a third person is willing to help support P.D.; nor is Mother capable of supporting P.D. on her own. To the contrary, the trial court observed that Mother is having "financial issues"

and needs additional support from Father.  Trial Ct. Op., 11/15/17, at 7.  Second, the agreement in **Roberts** did not state that it was permanent.  It left open the possibility that the court could require the father to resume child support payments if the mother and her husband became incapable of supporting the children.  **Id.**, 561 A.2d at 804.  Here, the Stipulation purports to be permanent.  It does not acknowledge that Father would pay support in the event Mother could not provide adequate support for P.D.  The lack of any contingency indicates Father's intent to permanently avoid paying for items that are not expressly mentioned in the Stipulation.  This arrangement runs afoul of the principle that a parent must support his child to the best of his abilities rather than the limit of his own whim.

Father points to his payment of P.D.'s tuition, health insurance, summer camp expenses and karate lessons as evidence that he does not intend to abandon his support obligations.  But as Mother observes, under Pa.R.C.P. No. 1910-16.6, these items are additional expenses over and above basic support, not a substitute for basic support.  **See** Pa.R.C.P. No. 1910-16.6(b-e) (health insurance premiums, unreimbursed medical expenses, private school tuition and summer camp are "additional expenses" that fall outside confines of "basic support").  Father's willingness to pay for extras does not excuse him from paying for basics.  The trial court's order ensures that he will pay basic support.

Finally, Father argues that the Stipulation did not authorize the trial court to increase support because the Stipulation only concerns custody matters, not support. We disagree. The Stipulation has been entered as an order of court. While its title only mentions custody, its content also encompasses support matters in paragraphs 13, 14, 15 and 17. The Domestic Relations Code prescribes, except for circumstances not relevant here,[4] that "[t]he court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order." 23 Pa.C.S. § 4352(a). Thus, the trial court retained continuing jurisdiction to amend the Stipulation in accordance with the parties' changing needs for support. The court's support order was a proper exercise of its jurisdiction.[5]

Order affirmed.

_____

[4] These circumstances include support matters involving parties in different states, 23 Pa.C.S.A. §§ 7101-7903, or in different counties of this Commonwealth, 23 Pa.C.S.A. §§ 8101-8415.

[5] We also note that there is no evidence that the bank account created for P.D. under paragraph 17 of the Stipulation should reduce Father's support obligation, because Father did not testify how much money he put into the account. Assuming Father deposited money into the account, it is unclear when and under what circumstances Mother can gain access to these funds.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18